Mr. Howard, you have 20 minutes per side. That clock shows the total. So if you'd like to make a rebuttal argument, please stop before you've used it all up. Just preliminarily to that, your honor, I am wearing hearing aids and I'm getting a little bit of feedback. So I would beg the court's indulgence and patience. If I don't understand the question, I would ask you to repeat it. That's fine. We'll try to be loud as loud as we can. Thank you, your honor. This case comes before the court this morning because there are genuine issues of material fact. That we believe should have been placed before the trier of fact, which would be a jury and not essentially summarily decided by the trial judge. And there were several issues of material fact that we raised in the appellate brief. And among those include, and I think to start with, is it seems to be that the trial court just assumed, based upon the defendant's statement, that a properly executed claim had not been presented to them. There's no analysis at all as to whether the claim was properly executed. And we submit that that is an issue that should have been decided by a jury. Because the record is replete with the plaintiff's insistence that as far as he's concerned, he did everything he had to do under the contract. And that's the basic issue. This is a breach of contract case. First and foremost. And it has as a sequelae to that, obviously, the issue of insurance bad faith and CPA violations. Because it is that contract of adhesion we all heard about in our first year contracts course, where we have, it's fairly one-sided. And Mr. LaFontaine's actual duty of performance on the contract was to pay the premiums in order to keep the insurance established in the event he ever became disabled. He had a secondary duty to obviously respond to the insurance company's request to provide sufficient information. The insurance company, on the other hand, once they are presented with a claim, had under the wax three things they could do. They could accept it or deny it within a certain time limit. Or they could ask for more time to process. This particular insurance contract dealt with two separate aspects. It dealt with the disability aspect itself. In other words, if the claimant comes in and says I'm totally disabled and I now need you to pay me the monthly benefits you promised you would pay if I became totally disabled, under the definition of your policy, that was one aspect of it. The other aspect of it was, and in Mr. LaFontaine's case, he asked that I actually, when I submitted this first claim for disability, he gave me partial disability, but what I really want here is total disability because I found that since that partial disability period, I haven't been able to go back to 90% of what I do for a living, which is a constructionman, a foreman of a construction crew. He was not able to handle power tools. He was not able to do heavy lifting above his shoulders. So all of these things were part and parcel of it. Can I ask you a question right there? Yes, sir. So the district court judge said that the evidence was insufficient to show that he was entitled to total disability under the policy. That's correct. That's what he said. Okay. We submit that that is a genuine issue of material fact. How did the district court define, understand what the term total disability meant? Well, we believe that they interpreted total disability to mean unable to do all of the functions of your job. And as we've indicated in our brief, that's not what the definition was. We think there was a misinterpretation by the court of law. And keep in mind that this contract that was written by the defendant also ---- Now, you just used the term 90%. Well, we said that he's, based upon his analysis of what he did for a job in the forms that he presented to the insurance company at their request, he said, here's what I do. And 90% of it I can't do anymore. And what we are stating is that we believe that that is a question of fact for the jury as to whether or not Mr. LaFontaine met the definition of total disability under the terms of the policy. And in light of that, the background of that, of course, is, Your Honor, that these contracts, if there are ambiguities in it, are going to be construed in the light least favorable to the drafter and most favorable to the non-drafter. And Mr. LaFontaine was clearly the non-drafter. Let me ask you another question. You had a claim for residual disability as well. Is that right? That is correct, Your Honor. That came along ---- You're pursuing both, before us are both claims, correct? Correct. We're doing this on two tracks. Right. Now, one of the issues with respect to residual disability was the requirement that you produce records and documentation regarding his income and whatnot. That's correct, Your Honor. And that was done. But in the record before the district court, there was virtually nothing. There were two items, actually three items, that was in the record before the district court, Your Honor. One was Mr. LaFontaine's sworn statement. And he went into detail at that time as to what he had submitted via his accountant. He even said I had to pay the CPA $2,300 to go over all of this to submit what was required under the contract. I did so. And then I sent them a 300-page binder. And in the evidence of record, excerpts of record, you will find his statement in about 115. You will also find my letter of August 24th, 2004, a certified letter indicating I am delivering this binder to you, this document to you. To whom? To the insurance company. Insurance company. Disability Management Company was the agent for Mass Casualty at the time. And then you will also find in that binder, I think on about page 84, 85 in the ER, there is a note from Disability Management saying I received the binder. We received the binder. Now, the tactical mistake that I made, and I freely admit to at this point, was not subjecting the district court to an additional 300-page document to be inserted in the excerpts of record, based, frankly, on my perhaps being a little chicken-hearted, and looking at district court rules and saying, well, they just don't want this massive documentation. They want kind of a summary of where we are. But I think it should be clear from any reading of the arguments that I've made at that level and from the evidence presented that the CPA was going to testify, prepare to testify, and that document would have been entered for the prior effect to determine whether or not Mr. LaFontaine fulfilled his requirement to produce the evidence that they asked for. And at this point, there is this motion before the court for the fact that I submitted rebuttal materials that were not in the excerpts of record. And I've gone over the case law, and I want to plead zeal over good sense. I did that because I felt that there was a misreading by the defense of the fact of this particular substantial, genuine issue of material fact, that somehow nothing had been done. And so but I don't think that the court needs it. I think the court has enough evidence to show that that was done to at least rebutt this conclusionary statement by the defendant that he never complied with the residual benefits issue in the contract. He did his best. You have to understand, we have a small-time businessman, a small businessman, who has this insurance policy, who is assiduously trying to comply with the terms so that he can receive the disability benefits that he contracted for. As he says in his statement, I paid over $43,000, $46,000 in benefits and premiums to these people. And I think what is really significant here is that he continued to pay the premiums right up until the time he sued. So that clearly, there are two right there that are genuine issues of material fact that should not have been decided by the bench, that should have been decided by the jury. The issue of total definition is another one, as we've already gone over, that should have been decided by the jury. The issue of whether or not he had a prima facie claim for residual disability is one that should have been decided by the jury. Much is made of Mr. LaFontaine's failure to cooperate. And the problem with that is, as I've indicated in the briefs, it's kind of a backdoor argument for latches, I guess. I can't figure out what else it might be. There's no evidence that I know or any argument by defendant that talks in terms of his performance on the contract delaying such that they don't have to grant their contract benefits or that they have to perform. I think you can read the evidence of record in such a manner as to show that all of the correspondence beginning back in 2001, right up to 2004, was also an attempt on the part of the insurance company to essentially delay payment or delay doing anything at the risk of sounding ironic. If you read his correspondence, it's clear that Mr. LaFontaine was the fellow who had to do the heavy lifting on that. There is no action on the part of the insurance company. He wasn't too swift in getting them all the information they needed. I'm sorry, Your Honor. He wasn't, how would we say? No, he was not. For a fellow who was seeking disability benefits, he didn't respond, how would we say, all that quickly? No. And we will demur to that. That is correct. But that does not necessarily mean that that gave them an excuse to continue to delay the process. Remember, we started out with total disability. We said we want total disability. Nobody asked for an independent medical examination that time, although they hinted about it in their correspondence. The insurance company did nothing to pursue this. They sort of laid back in a passive-aggressive manner and said, well, you come to us, you give us what you want. He filled out all their forms. He listed carefully in their forms what he did for a living. There was no correspondence after he filed his form and filed the physician's report on what he was able to do and not able to do. And by the way, that physician's report also had a second evaluation from another medical professional in Kitsap County, going through everything that he could do, and that all went to them. So by the time he initially asked for that total disability issue, he had already presented them this medical evidence. They never came back and said, well, okay, let our doctor examine him. We want to do that. Or we need more information about what you do. We know what you listed in here, but we need more information. Well, what else is he supposed to give them? See, that's the problem. He's given them what they've asked for, and then they waited until April of 2002 to even come back and say, well, you know, we've caught you on videotape canoeing. And so we think that you're being fraudulent in your claim. Again, if you look at that Calavig case, this is one of these deals where the insurance company is kind of saying, our suspicions are you're not really bona fide here, so we're not going to do much more. Again, the WAC say you've got to either accept the claim or reject it or say we need more time. But when you say we need more time, you've got to be specific. They weren't specific at all in 2002. They were specific. They didn't get specific until August of 2004, and I said, look, we've given you everything we think you need under the policy based upon our reading of the policy. Now you tell us what else you need. And then he said, well, we need this medical release. So we sent the medical release. And then there were two separate violations of the WAC insofar as the 30-day time limit was concerned for them to produce in writing what else they needed. They came back and said in October the 6th, we've got this, and thank you for the medical evaluation. We heard nothing from them until I called them on November the 9th, which is and so there was no writing 30 days after giving them what we felt was a perfected claim, saying here's what else we need. And then there was an additional, I guess, 39 days or 40 days before we filed suit. Again, no contact. Now, their excuse for the second violation of the WAC, and remember, Kalavig says we only need one violation of the WAC to prove bad faith or to establish an element of bad faith in a CPA violation. Their second explanation was, well, he said he was going to sue. And so we didn't feel we had to do a useless act, and they cited a 1932 case. I don't think any of us were born at that time, but that's the case they cited, and there seems to be nothing else except that. Well, you can look at that as to whether or not that was a good reason or a bad reason, but that may be another issue, genuine issue of material fact, for a jury to determine whether they were acting in good faith at that time. But, again, it should not have been dismissed in summary judgment based upon, frankly, very little contractual analysis by the Court. And then, essentially, the theme seems to be that we are going to pretty much take the defendant's word that this is the way it is, there wasn't a perfected claim, he waited an awful long time. Again, there's no latches argument here. There's no timely failure to perform argument that can be presented by the defendant because it's just not in the law for that to happen. He was slow. He's indicated that he was slow on the tax returns because some of them had been destroyed in a warehouse in Hawaii. He had a small business in Hawaii with his wife. He transplanted to Washington State. He went back and recreated all that. He then went out and spent a lot of money for a CPA to do the analysis required for the residual disability benefits, and, yes, it took months. How much is at stake on the disability benefits? I'm sorry again? How much is at stake? Whatever his disability would have been from the 1998, it's $4,000 a month. And had he been paid that, then it would have been $4,000 a month from 1998 to the present. And I didn't do the totals, Your Honor. I apologize. I'll reserve my time. Thank you very much, Mr. Morgan. Mr. Howard for appellees. Good morning, Your Honors. I'm Christopher Howard here on behalf of the appellee, Massachusetts Casualty Insurance Company. If I have to refer to them, I'll call them MCIC. This is a matter where the district court correctly dismissed a case at the close of discovery. And although appellant comes up and talks about facts they suggest are underlying the case, the issue before this case is what facts were put before the district court and were made subject to scrutiny at the district court level. This was a summary judgment proceeding, right? This was a summary judgment proceeding. And the reason I stress it. Why don't Dr. Earle's, why don't the statements of Dr. Earle give grounds for total disability? Your Honor, the definite. That's what I thought he said. I'm sorry. I didn't mean to cut you off. I thought that's what Dr. Earle said. So why on a summary judgment don't we have to accept what he said? What Dr. Earle said is that by AMA or certain medical standards and using certain medical terms, he would consider him totally disabled from his medical point of view. But Dr. Earle was quite direct and quite honest in saying he is not interpreting a contract, and this is a case of contract interpretation where disability is defined under the contract. And I'll do something a little out of order because I think it's very important to understand. One point we agree with counsel. There are two coverages under this contract. And I will take as an assumption for a moment that that 90 percent figure were accurate, and I don't believe that that's established accurately with respect to the duties he could perform. But if we just take that as an assumption, but he can still do some of his material duties, he can still do some of the substantial material duties of his job, then the issue isn't total disability, but one of residual disability. Well, what's the definition of total disability? The definition of the policy. The definition of total disability in the policy, which I can read to you, and I suspect I can paraphrase it accurately, is substantially unable to do the material duties of your regular job or occupation. That literal language of your paraphrasing or whatever, normally I would have thought that language means someone is substantially unable to do the duties of their job. They might be able to do some duties, but still they're substantially unable to do the duties as a whole. It seemed like the district court adopted an interpretation saying they had to be substantially unable to do each and every duty of the job. Your Honor, with respect to this case, and I'm assuming that you're taking one set of facts that have been asserted now as totally accurate with respect to what the job actually was, which was not before the court any actual factual breakdown of his jobs. I'll return to that. I submit that in the context of a policy that specifically provides also residual disability coverage, so that if you can do some of your duties but not all of your duties, the same policy says if you cannot do some of your duties on a daily basis, then you qualify for residual disability. And the inquiry into the residual disability policy has another step associated with it. It is no longer a question of are you totally disabled because you cannot do some quantity of your duties, if you can do some of them. Now it's a question of your net income loss under the policy. And you could be substantially able to do your job, but still be unable to do some particular duties, I suppose. That is right. And then if you could meet the income decrease requirement, you could recover on those duties. That is correct, Your Honor. Going back to total disability, why wouldn't it just mean you're substantially unable to do the duties as a whole? Why? It really seemed to me that district court's interpretation was strained in the context of an insurance policy where ambiguities go to the insured. Your Honor, I would not suggest there's an ambiguity here because it's a definition that is the definition as opposed to referring to another definition. The question is, and the question is very specifically, where someone chooses to define or whether someone chooses to define what the duties are, the material duties. And what you have here is an insurer who, and there is some question as to what his duties were, is saying that because I cannot do some of what I'm doing every day, but I can continue to do some of my job, if I can quantify that as 90 percent but I can still do my job and earn my living, then I don't have to submit what I should be submitting to require, under this policy as a whole, to meet the requirements for a residual disability policy. And my response, I think, more directly to your question is we have a policy that should be read as a whole. There is both total disability and residual disability. And the problem in the court below, because the tactics are different by Mr. They did not want to prove residual disability. They not only did not want to prove that when MCIC kept asking for the information to make the calculation of what was due, they did not want to prove that in opposition to summary judgment. In their brief, which is in the clerk's record, at docket number 21, page 12, where they say he's totally disabled, we – and they never get to residual disability. So, Your Honor, although I understand you are expressing some sympathy for their position. Not at all sympathy for their position. I'm raising a question about how you interpret total disability under the policy in light of the general principles of insurance law. And under the general principles of contract law, you interpret the policy as a whole. And it has two provisions. Since it has both total disability and residual disability, when you cannot do some of your – So when does anybody ever qualify for total – let's see. When does anybody ever meet this definition, according to your interpretation? Well, when there are people who cannot do any of the substantial or material duties of their occupation. So substantial is basically taken out of this. No. It has to be you cannot substantially do a material duty of your occupation. Not – now, mind you, I want to say what I just said was the residual disability qualification. If I cannot substantially do the duties, and the question now really becomes is it appropriate when you say the duties, the material duties, does the mean all or does the mean some? Since there is another provision – So it's – well, go ahead. I won't – No, but there's another provision in the policy that specifically kicks in. At some, reading the policy as a whole rationally allows for someone who cannot do all of their material duties is totally disabled. I will also point out that under residual disability, if you have a 75 percent loss, it's a whole loss. So it's not like we're not going to pay you. But if you have someone who cannot do some of the important parts of their job but can do others and has no loss of income, that is correct. Their residual disability loss would be zero. And indeed, that is what part of the problem is here. In a situation where the LaFontaines, as established in the proof of claim, have not one but several family companies, where there are family companies, and they can control what is being paid and what he's doing in the administration, the executive, and the actual executing, doing the work, part of those companies, the net income inquiry becomes a very important inquiry. And in fact, I would submit that based upon simply the combination of the application as well as what documents were eventually received in the claim for loss, it appeared to be precisely what is going on. He changes his definition of his duties, coincidentally, as is convenient for the proof of loss. Well, you said a minute ago or a few minutes ago that there was some dispute over what his duties were. No, I don't think dispute is the word nearly as much as lack of adequate proof, because whenever asked, we'd like to get an actual description of your duties. There was a lack of cooperation. He provided some of it. He provided information here about his duties in one of these forms. I can't remember which one it was. There is a proof of loss form where he puts in information which is contrary, and they have the right under the policy to seek more information, which was hit with a we don't have to give you any more type response. So did you deny his benefits on the grounds that he failed to cooperate? The benefits were never denied because the proof of loss was never perfected or finished, and up to the date of the loss. So did you take a position in this litigation that he was not entitled to benefits because he failed to cooperate? Your Honor, in the briefing to the court, it was actually stated he may still qualify for residual disability if he would give that information. So up to the point of summary judgment motion in this case, if you look at our summary judgment, if he will cooperate and give the disability information, he may still qualify. Okay. But that's not asserted as a defense. Oh, no. The fact is it does become a defense with respect to the question of is there bad faith or is there a breach of some Washington administrative code. Because the answer, if you're saying, look, we don't think you have total disability under the policy. We want to pay you residual disability. Will you cooperate? And the response, as shown in the briefing at the district court level, is no, it's total that we want. The insured contracting party does not have the ability to unilaterally determine this is all we're going to give you, because we think we want total and we don't want to cooperate in the determination of residual. Now, the important point So you want to consider paying him residual and he wants  Is that what you're saying? That's correct. That's where this matter stood as of when the summary judgment was pending. And, Your Honor, the important part about that issue is when you asked a question, how much money is at stake, you received an answer that related to the total disability claim. But the real answer, and based upon all the information in the record, is we don't know. And that is because it's not just a question of him saying, here's the reduction of my W-2. I didn't earn as much. In the case of interlaced or multiple family companies, the company has a right to have some ability to inquire as, what were you actually doing? Did you merely reshuffle how the money is being paid in the company? This never got that far. This never got to the point where determination could be made as to how much to which he might be entitled. Instead, what he wanted to do was to be able to continue to earn money from his family companies and get the full total disability while continuing to earn money while he could still do some of the substantial and material duties for which he was insured. That is why it's appropriately and appropriately found by the district court, not a total disability case, but a residual disability case. And, Your Honor, this links into one matter I don't want to waive that has to do with the material submitted in a late fashion. And when I say a late fashion, had those materials been submitted late for the summary judgment, we may have found some way to accommodate the appropriate cross-examination to still establish why they were not sufficient to establish a residual disability claim. But materials submitted after we have filed our appellee's brief are appropriately stricken and not considered by the record under both the Kirshner and Tonry cases. And, in fact, in this case, they reinforce the whole point about what the dispute is because there's a reason they were not submitted below. Because below, LaFontaine was making a tactical decision to go for total disability and not cooperating in the determination of residual disability under a policy that, when read together, that is to say, when you read both the definition of total disability and the disability, residual disability rider, which you will find in the record at Excerpt of Record 44, and the definitions are excerpted, I think, fairly accurately at page three of our brief. The residual disability is the coverage that would apply here. And, Your Honor, it was never denied because they never finished making their claim for it, which is why summary judgment was appropriately granted. And it's not even granted based upon the premise that we proved they didn't they breached the contract. It's denied based upon the appropriate point that they did not prove that MCIC breached the contract because they did not give MCIC adequate information to invoke coverage under the policies. This is a contract interpretation case. The burden is on the plaintiffs, not on the defendant. We don't have to prove that they breached. We do not have to prove or did not have to prove at the trial court level that they failed to abide by the contract. Well, it sounds like you take the position that he didn't qualify for total disability. He did not qualify for total disability. He was denied total disability. There was not a denial of total disability. Then what was there? There was a we want to determine the appropriate amount under your residual disability. It's one policy. Doesn't that mean that you were denying him under total disability? It's one policy. And your question, Your Honor, makes sense if there's two separate policies. And so you're saying it sounds to me like you're saying, look, you don't qualify for total disability, but you might qualify for residual disability. And here's what we need to determine whether you're eligible for. I believe that would be a reasonably, a reasonable paraphrase. It's not an exact statement of how the documents went. And as you look in the excerpt of record, starting at page 19 and going until page 92, there is more than ample documentation of them, of MCIC attempting to get him into residual disability to determine the appropriate amount of coverage so they could, as they did the first time, pay him. This is not a company that didn't want to pay him. This is a situation where he wanted to unilaterally make a determination, I don't have to do this because I want total disability. And that's not how the whole contract should read, because you have a contract that provides for both. It doesn't just provide for if I'm totally disabled, I get this. It provides for if you can substantially not do the material duties, you give this. But if you can do some but not others of your material duties, you get that. And that becomes a central issue in this case. He probably did qualify for some amount of residual disability coverage if he had ever produced evidence to MCIC or the district court of the net income loss. That evidence was never produced. At the close of discovery, that evidence was never produced. This is conceded by counsel. It may have been a tactical error, but it was a tactical decision they made. They did not prove their case below. Your time is running out. So could you do me a favor and address your, address his Washington Consumer Legal Remedies case? The Consumer Protection Act requires that there have been a breach. It requires five elements. And first, it requires an unfair deceptive act. And they want to, if the record is replete with evidence of the communication and there is, I think, as the trial court correctly found, no evidence of unfair deceptive acts, and the trial court correctly found there was adequate communication under the Washington Administrative Code, so that there was no basis for a consumer protection action. In addition, Your Honor, even appellant appears to take the position that if they made a proof of claim, it would be unclear when they made it until a date on September 28th of 2004, by which time there was a timely response to that and a request for more information, which qualifies under the category of, we need more time, we need you to give us more information in order to process your claim. We do not agree that they ever made a fully executed proof of claim to which they didn't get that far because they didn't give the information to let them admit or deny, which is why the consumer protection action claim must fail. Your Honors, the district court appropriately concluded that there was more than adequate evidence of adequate investigation, one of their CPA claims. And it cited to the exhibits that excerpts of Record 19 to 92, which is where they are now, particularly the exhibits, pages 23 and 26 of Mr. Champlain's declaration, the district court appropriately found a failure of the plaintiff's proof in this case at the close of discovery. They cannot come now in rebuttal and put in proof to which we had no chance to respond or explain, cross-examine or inquire, and say we've tactically held this back out of zeal until now. We request this court strike the improper supplemental record, strike the references to the record in their own reply, which appear to be primarily using this to impugn the integrity of the Defendant and Defense Counsel, and that the district court summary judgment of dismissal be affirmed. If you have no other questions, I would not use up my time. Thank you very much. I just want to clarify very quickly that the supplemental materials in my reply brief was in no way meant to impugn the integrity of any of the Defendant's Counsel. I find them to be high-quality people of great integrity. We don't take it that way. It's just a question whether we would permit the record to be expanded. Well, I think the case law is very clear, and I agree with counsel. It wasn't in the evidence of record. It was ñ it was ñ and I guess what I was attempting to do was incorporate it by reference based upon the ERs that I cited to you. And, again, it was done to rebut what I felt was a clear misstatement of fact, that the Defendant was not in receipt of these residual disability documents so that they could make a judgment as to whether or not residual disability was warranted. But here's the problem. I think we all agree that it's a two-track policy. And it's very clear that as early as 2001, Mr. LaFontaine was asking for total disability. He's never veered from that. He believes he meets the definition of total disability. And I would invite the Court's attention to the original description of his duties that he gave when he was awarded partial disability by the Defendant in 1998. That can be found on page 48 of the ERs. And also the ñ when he filed in 2001, if you look at page 67, he then, again, gave essentially the same description of his duties that talked about the physical labor that was involved in his job. Now, at no time had the Defendant ever conducted any kind of independent examination to determine what it was he actually did. And the problem that you have is now they're saying, well, you know, he's not kind of a regular Joe who goes out over to the shipyard at PSNS ñ and, of course, that would be a federal workers' comp case ñ and works for a salary. He's an independent businessman, and his wife owns the corporation. He's got all these corporations. And so, you know, clearly there's something suspect there. He's not our average insurance client, apparently. But the fact of the matter is they did give him the insurance policy. He paid those faithfully. And, again, he should be permitted to present his theory of the case to the jury and not just have it summarized. How do you respond to Mr. Howard's argument that Dr. Earle's statement was giving a medical definition of disability and not saying he was disabled within the requirements of the policy? Well, you know, presumably Dr. Earle can give a medical opinion as to what total disability means, and that can be matched up to what the policy says. And that is something, again, that the jury ought to be able to decide. The only other thing that could have been done, I suppose, is get an insurance policy expert to come in and testify or provide a sworn statement as to what total disability means in the insurance industry. We had to go by the definition, the plain words of the definition in the policy, in order to determine total disability. And he had a good-faith belief that he met the terms of that. If we're going to get into ambiguities in contracts, then I would submit that this Court has to give more credence to what Mr. LaFontaine determined was total disability than what the insurance company now says it is. From your standpoint, is it my understanding that residual disability is just not an issue? He's either totally disabled or he's not, and the residual disability is not relevant at all? There was an ongoing attempt to try to cooperate with the insurance company on this issue. And you have to understand, we're not at litigation at this point. We're trying to get benefits under the policy. But you're claiming, as I understand it, he's only interested in getting total disability. He's not interested in residual disability. I can state with great assurance that Mr. LaFontaine is interested in getting any money from the insurance company, and he was willing to negotiate with them about that, and I think the record is clear about that, too. Had he furnished them everything that they requested in order for them to determine whether or not he was entitled to any residual disability? We believe that he did, based upon the what was in the evidence of record that was given to the court, even without the supplemental materials that were provided. We think the court can still conclude that he sent them a great deal of material that to this day they have not even responded to. But that material that he sent, the stuff in the record indicating he sent them material, but the material he sent them I think is not in the district court record. No, I did not, because it was a 300-page document in a binder that was described by Mr. LaFontaine in his sworn statement and was also acknowledged, receipt was acknowledged by a company representative. I think we're at the close of time. Your clock is over time. I'm sorry. Let me just ask both parties a question. Did the parties here consider using the Ninth Circuit's mediation department? Is that an issue that was addressed? We did, Your Honor. We did use both private mediation and a list of surveillance. Okay. I believe retainerization was better for several reasons. I see. Okay, thank you very much. Now, LaFontaine, the Massachusetts casualty shall be submitted.
judges: Gould, Paez, Strom